UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
ANGELA WALDER,

                      Plaintiff,                    Index No. 07-CV-235 (AJP)

      -against-

WHITE PLAINS BOARD OF EDUCATION,
NARCI MEDINA-ASSISTANT PRINCIPAL,
and NATALIE ARONE-CSEA UNION
PRESIDENT,

                      Defendants.
------------------------------------------------------X

## PLAINTIFF'S COUNTER-STATEMENT TO
## DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS

Pursuant to Local Rule 56.1, Plaintiff Angela Walder, by and through her attorneys The McFadin Law Group, submits this counter-statement to Defendants' Local Rule 56.1 Statement of Material Facts as follows:

1. Admits the truth of the allegations made in ¶ 1.

2. Admits the truth of the allegations made in ¶ 2.

3. Admits the truth of the allegations made in ¶ 3.

4. Admits the truth of the allegations made in ¶ 4.

5. Denies so much of the allegations in the first sentence of ¶ 5 that "plaintiff made complaints of a respiratory condition…" In fact, Plaintiff complained not just of her respiratory conditions, but also of the panic attacks she was suffering.

      Denies so much of the allegations in the second sentence of ¶ 5 that "[a]lthough there was no evidence to support a claim of a hazardous condition, Ms. Medina offered the plaintiff the option to transfer to another building; an option which she outright refused." In fact,

the White Plains High School ("School") underwent extensive construction during several years of Ms. Walder's employment leading to her respiratory condition. Further, Ms. Walder suffered from panic attacks as a result of the harassment she had to endure at the hands of Ms. Medina. Further, Ms. Medina did not offer Ms. Walder the option of switching buildings at the January 2006 meeting. At that meeting, Ms. Medina only commented that "your medical condition is not my concern" to Ms. Walder.

6. Denies so much of the allegations in the first sentence of ¶ 6 that plaintiff's request to report to work later than her scheduled time was on the basis of "a) she recently moved and lived further away from the school and b) she was having problems with her children." In fact, Plaintiff requested the accommodation because she was constantly sick due to the School's construction and had to travel further to work.

Denies all the allegations in the second sentence of ¶ 6. In fact, there was a widespread practice to make accommodations such as the one Plaintiff requested. Further, Ms. Medina initially allowed Plaintiff a 45 minute accommodation for two to three weeks but thereafter unilaterally and without notice changed Plaintiff's schedule to require first period (at 7:30 am).

7. Denies all of the allegations made in ¶ 7. Because Ms. Walder was a tenured employee, she was only to be subject to an employment review once per year. Defendants' Exhibit "J" is unsigned and unsupported.

8. Denies so much of the allegations made in ¶ 8 that Plaintiff "**only** named the District as a party to this matter" (emphasis in original). In fact, Plaintiff, unrepresented by counsel, named the School and the District as parties and listed Medina by name in the annexed description to her EEOC charge. Admits so much of the allegations made in ¶ 8 referring to the

2

timing of the filing of the EEOC charge, the District's imposition of position papers, and the EEOC's issuance of a right to sue letter.

9. Admits the truth of the allegations made in ¶ 9.

10. Denies so much of the allegations made in ¶ 10 that "[d]espite the fact that the plaintiff failed to provide the appropriate medical certification..." In fact, Ms. Walder's physicians provided all of the required information for her FMLA request but did not use the appropriate form. Admits so much of the allegations made in ¶ 10 that Plaintiff requested leave, was granted leave, and received benefits.

11. Admits the truth of the allegations made in ¶ 11.

12. Admits the truth of the allegations made in ¶ 12.

13. Denies so much of the allegations made in ¶ 13 that the Superintendent denied Plaintiff's request for half leave under the collective bargaining agreement ("CBA") "[b]ased upon the fact that the plaintiff had exhausted all of her sick leave, and the lack of proper medical documentation submitted in support of her request..." In fact, according to the letters from the Superintendent and submitted by the Defendants as Exhibits "N" and "O," the Superintendent apparently denied Plaintiff's request for half leave because she was not suffering from a "catastrophic illness," a term referred to nowhere in the CBA.

14. Admits the truth of the allegations made in ¶ 14.

15. Admits the truth of the allegations made in ¶ 15.

16. Admits the truth of the allegations made in ¶ 16.

17. Admits the truth of the allegations made in ¶ 17.

18. Admits the truth of the allegations made in ¶ 18.

19. Admits the truth of the allegations made in ¶ 19.

## PLAINTIFF'S COUNTER-STATEMENT OF MATERIAL UNDISPUTED FACTS

Plaintiff contends the following are undisputed material facts:

20. Plaintiff was employed as a special education teaching assistant ("TA") at the School from 2000 to in or around March 2007. *See*, Deposition of Ms. Walder ("Walder Depo.")[1], 114:18-116:19, Exh. "A."

21. During this time, Ms. Walder was employed first for approximately four years in the School's SAIL program, a special program for students with developmental issues, and then in the School's P-level classes. Walder Depo., 20:12-22; 47:22-24.

22. Within the SAIL program, the School employed approximately ten TAs, including approximately equal numbers of male TAs, *see*, Walder Depo., 75:19-76:7, and five female TAs, *see*, Walder Depo., 84:2-9.

23. Shortly after she began working at the School, the School began a construction project to a substantial portion of the School, including areas where Plaintiff frequented. Walder Depo., 37:20-38:23; *see also*, Affidavit of Tina Edwards ("Edwards Affidavit"), ¶ 5, Exh. "B."

24. As a result of this construction, Plaintiff and other employees at the School who also worked in the construction areas suffered from frequent bouts of bronchitis, sinusitis, ear infections and nose bleeds. *Id.* at 38:4-12.

25. Ms. Walder, herself, had sinus and/or other upper respiratory infections every three weeks. *Id.*

26. Plaintiff, as well as several other employees at that time, attrbituted their sickness to the construction that occurred at the School. *See*, Edwards Affidavit, ¶ 6.

---

[1] Ms. Walder was a *pro se* plaintiff until July, 2010. She represented herself the deposition taken by the Defendants of her. While she did serve a request for documents upon the Defendants, she did not take a deposition of any Defendant. As a result, the record herein is extremely limited.

4

27.  Due to approximately two years of construction, constant and repeated medical issues, and stress and harassment at work related to her absences from work to deal with her medical issues (described further below), Ms. Walder developed panic and anxiety attacks beginning in or around 2005.  Walder Depo., 39:2-41:5.

28.  She saw several medical professionals and received treatment regarding her medical issues throughout her time working as a TA at the School.  *Id.* at 40:4-19 (Dr. Lee Adam Burke, chronic bronchitis); 41:18-44:3 (Dr. Melissa Welby, psychiatrist who treated panic attacks); 134:13-15 (Dr. Cynthia Jerome, ears, nose and throat doctor); 136:12-19 (Dr. Richard Young, ears, nose and throat doctor); 138:6-12 (Dr. Chang, diagnosed Ms. Walder with chronic fatigue); 140:5-12 (Dr. Holly (forgot last name)).

29.  Plaintiff was eventually granted tenure in 2003.  *Id.* at 54:7, 8.

30.  As was the usual case, all assistant teachers were required to appear for work each work day at 7:30 am.  *Id.* at 100:16; 101:22, 23.

31.  In or around the beginning of the 2003-2004 school year, Ms. Walder sought two work accommodations: a change out of the SAIL classes and late entry to arrive to work at 8:00 in the morning, thirty minutes after the normal 7:30 start time.  *Id.* at 99:2-20.

32.  She sought these accommodations due to her constant and repeated sickness, which drained her and took away her ability to properly attend to the high-needs students in the SAIL program, and because she moved from Yonkers to West Haven, Connecticut.  *Id.* at 99:11-20; 102:17-103:7.

33.  Ms. Medina, Ms. Walder's supervisor, granted Ms. Walder's request to be switched out of the SAIL program and initially granted the request for late entry.  *Id.* at 100:6-101:24; 103:9, 10; *see also*, Edwards Affidavit, ¶ 7.

34. Ms. Walder's accommodation for late entry was only granted "for a short period of time." Edwards Affidavit, ¶ 8.

35. Shortly after granting her request for late entry, Ms. Medina began unilaterally and without notice scheduling Ms. Walder for first period classes beginning at 7:30. Walder Depo., 100:9-101:15. As an example, Ms. Walder would arrive to work at 7:50 ready to begin second period and believing she was granted the first period off, and would discover she had missed a first period class she was scheduled for. *Id.*

36. As a result, the teachers who Ms. Walder was supposed to assist became aggravated and resulted in Ms. Medina pulling Ms. Walder into her office and changing her schedule repeatedly. *Id.* at 101:2-5; 44:20-46:22.

37. These scheduling disputes began shortly after Ms. Walder was shifted out of the SAIL program. *Id.* at 46:23-25.

38. In contrast, male TAs were permitted to work on unrelated personal work such as coaching, after-school jobs, college classes, and working on School computers to check email and work on sports-related strategy work. *Id.* at 74:15-18.

39. All work related to sports was for the regular student body at the School, not the students in the SAIL program or P level classes. *Id.*

40. Additionally, often times the male TAs were allowed to perform sports-related work such as meeting with college scouts and preparing for practices. *Id.*

41. At least one male TA was also granted a "free period" to apparently work on his college class work. *Id.* at 78:17-19.

42. At least one other male TA frequently took sports related phone calls during class. *See*, Edwards Affidavit, ¶ 9-12.

43. The female TAs were not granted such accommodations. Ms. Walder was regularly told by Ms. Medina that no TA got special accommodations, that all TAs had to be in class and for Ms. Walder to mind her own business,. Walder Depo., 79:9-24.

44. Additionally, the one time Ms. Walder did attempt to use a School computer on her break, she was told by Ms. Medina that she could be fired and should not be on a computer even on her break. *Id.* at 80:24-81:11.

45. The refusal to give Ms. Walder accommodations was incredibly important to her because she had to regularly deal with her medical issues. *Id.* at 82:13-24.

46. Ms. Walder's decision to speak out about the refusal to obtain accommodations caused her to become the recipient of harassing behavior from Ms. Medina. *Id.* at 37:5-17; 44:6-19.

47. As a result of the harassment over her sickness and scheduling issues, Ms. Walder began having panic attacks, for which she was prescribed medication. *Id.* at 40:20-41:8.

48. The harassment continued after Ms. Medina left the employ of the School. *Id.* at 112:15-20.

Dated: New York, New York
August 12, 2010

*Respecfully Submitted,*

**THE McFADIN LAW GROUP**
*Attorneys for Plaintiff*

By: _____
Adam Nicolazzo (AN 1583)
11 Broadway, Suite 715
New York, NY 10004
(646) 723-2757

To:   Lewis R. Silverman, Esq.
      Samantha Velez, Esq.
      Rutherford & Christie, LLP
      369 Lexington Avenue
      New York, NY 10017
      *Attorneys for Defendants White Plains Board of Ed. and Narci Medina*