UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ANGELA WALDER,                                    :

          Plaintiff,                           :          07 Civ. 0235 (AJP)

      -against-                              :

                                         **OPINION AND ORDER**

WHITE PLAINS BOARD OF EDUCATION, NARCI    :
MEDINA, Assistant Principal & NATALIE ARONE,
CSEA Union President,                             :

           Defendants.                         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

           Plaintiff Angela Walder brings this Title VII action against the White Plains City

School District ("WPSD") (erroneously sued as the White Plains Board of Education), alleging that

it discriminated against her on the basis of her gender and retaliated against her for having filed a

complaint with the Equal Employment Opportunity Commission ("EEOC").  (Dkt. No. 8: Am.

Compl.)[1/]

           Presently before the Court is defendant WPSD's summary judgment motion.  (Dkt.

No. 30: Notice of Motion.) The parties have consented to decision of this case by a Magistrate Judge

pursuant to 28 U.S.C. § 636(c).  (Dkt. No. 28.)  For the reasons set forth below, defendant's summary

judgment motion is GRANTED.

---

[1/]     Walder's claims against the individual defendants, as well as her claims against the WPSD
for disability discrimination in violation of the Americans with Disabilities Act ("ADA"),
violation of the Family Medical Leave Act ("FMLA") and retaliation in violation of Title VII
"for plaintiff's conversion to hourly pay," previously were dismissed. (See Dkt. No. 16:
9/24/09 Kaplan Order; Dkt. No. 18: 9/29/09 Kaplan Order; see also Dkt. Nos. 34 & 41: Defs.
& Walder Rule 56.1 Stmts. ¶ 18.)

**FACTS**

Plaintiff Angela Walder began working as a Teaching Assistant ("TA") for the White Plains School District on November 27, 2000.  (Dkt. No. 8: Am. Compl. Ex. E: Walder Ltr. to Michelle Trataros at 1; Dkt. No. 32: Velez Aff. Ex. E: Walder Dep. at 11; Dkt. No. 34: Def. Rule 56.1 Stmt. ¶ 1; Dkt. No. 41: Walder Rule 56.1 Stmt. ¶¶ 1, 20.)  Walder was required to work a minimum of six hours each school day, and was allocated "one (1) day of sick leave credit for each month of service" and "two (2) personal days with pay per year."  (Walder Dep. at 28; Velez Aff. Ex. F: Collective Bargaining Agmt. at 7, 9-10.)[2/]  Although she was an hourly employee, Walder was entitled to "[a]nnualization" of her wages provided she maintained a "sick leave balance of 10 days each year as of June 30."  (Collective Bargaining Agmt. at 7.)

Because she had experience working with "disabled students" (Walder Dep. at 14-15), Walder originally was assigned to help teacher Maria Gentile instruct fifteen "special needs students" in  "life skills . . . math, reading, social studies, [and] science."  (Walder Dep. at 17-27.)  In the classroom, Walder led cooking lessons, assisted students with their academic instruction, and escorted them to the cafeteria, gymnasium and art class.  (Walder Dep. at 24-25.)  Walder performed well in this role and on November 27, 2003, after a three year probationary period, was granted tenure upon the recommendation of Superintendent Timothy Connors.  (Velez Aff. Ex. G: 9/24/03 Medina Ltr. & 10/9/03 Connors Ltr; Walder Rule 56.1 Stmt. ¶ 29.)

---

[2/]    If Walder regularly worked "20 or more hours per week" she would receive "paid days for Thanksgiving and Christmas," and after five years of employment, would be given "an additional two paid days per year covering New Year's Day and Memorial Day."  (Collective Bargaining Agmt. at 7.)

Shortly after Walder started working at the school, construction began on a new office and science wing. (Walder Dep. at 37-40; Walder Rule 56.1 Stmt. ¶¶ 23-24.) Debris from the construction caused Walder to suffer frequent "sinus [and] upper respiratory infection[s]." (Walder Dep. at 37-38; Walder Rule 56.1 Stmt. ¶¶ 24-26.) Because of her recurrent illnesses, Walder requested a "lighter schedule" and, during the 2003-04 school year, asked to be taken out of the "special needs" classroom. (Walder Dep. at 46-47, 98-104; Walder Rule 56.1 Stmt. ¶ 31.) At the time, Walder explained, she was "physically and emotionally drained," and working everyday with the special needs students "got to be too much and [she] couldn't do it." (Walder Dep. at 102-03; Walder Rule 56.1 Stmt. ¶ 32.) Around the same period, Walder requested a "late entry" because she had just moved to Connecticut and was still sick, "[s]o it would take [her] even more time to get [her]self together to come to work." (Walder Dep. at 99; Walder Rule 56.1 Stmt. ¶ 31.)

Director of Special Education Narci Medina changed Walder's start time from 7:30 AM to 8:00 AM and removed her from the "special needs" classroom. (Walder Dep. at 12-13, 32-33, 46-47, 98-103; Walder Rule 56.1 Stmt. ¶ 33.) Medina refused, however, to give Walder a lighter workload, explaining "that all the TA's had to have a full schedule." (Walder Dep. at 103.) Instead, Walder performed clerical work in the main office and was dispatched to various Special Education Department classrooms and study centers as the need for a TA arose. (Walder Dep. at 46-52, 102-03.) As a so called "floater," Walder's schedule depended on the Department's needs and varied from day to day. (Walder Dep. at 44-46.)

In April 2005, "as a result of [her] being so physically sick," Walder began having anxiety attacks. (Walder Dep. at 39, 44, 114; Walder Rule 56.1 Stmt. ¶ 27.) After consultation with

her doctor, Walder applied for, and was granted, sick leave without pay under the FMLA, effective

April 4, 2005.  (Velez Aff. Ex. G: 4/8/05 FMLA Request Form & 4/11/05 O'Connell Ltr; Walder

Dep. at 114.)  Because Walder's FMLA leave encompassed the remainder of the 2004-05 school

year, she did not return to work until September 6, 2005. (Velez Aff. Ex. G: 4/8/05 Walder Ltr. &

8/26/05 Welby Ltr.; Walder Dep. at 114.)

Upon her return to work in September 2005, Walder continued to miss a significant

amount of time due to illness: between September 12, 2005 and December 23, 2005, she missed

twenty-two work days.[3/]  (Velez Aff. Ex. H: Walder Attendance Records; Velez Aff. Ex. I: 1/12/06

Performance Review; see Defs. & Walder Rule 56.1 Stmts. ¶ 3.)  On January 12, 2006, Walder met

with Medina for a mid-year performance evaluation.  (1/12/06 Performance Review; Walder Dep.

at 55-64; Defs. & Walder Rule 56.1 Stmts. ¶ 4.)  According to Medina, Walder's "punctuality and

attendance" problems negatively "impacted on the instructional supports that were needed in the high

school."  (1/12/06 Performance Review; Defs. & Walder Rule 56.1 Stmts. ¶ 4.)  Although she

otherwise was an "effective teaching assistant," Walder received an "unsatisfactory" rating, with the

recommendation that she "reflect on her punctuality and her attendance for the remainder of th[e]

school year."  (1/12/06 Performance Review; see Defs. & Walder Rule 56.1 Stmts. ¶ 4.)

---

[3/]     Walder's personnel file indicates that she took urgent personal business days on December 12
and 19, 2005.  (Velez Aff. Ex. G: Requests for Personal Days) A note from Dr. Karen Stone,
dated September 22, 2005, indicates that Walder was sick on September 21 and 22, 2005.
(Velez Aff. Ex. G: 9/22/05 Stone Ltr.)  A second note from Dr. Stone, dated October 21,
2005, indicates that Walder was being treated for "allergic rhinosinusitis."  (Velez Aff. Ex.
G: 10/31/05 Stone Ltr.)  There are no records in Walder's file explaining the remaining
absences.

Walder missed an additional thirty-four work days during the spring 2006 term.  (See Velez Aff. Ex. H: Walder Attendance Records.)   A second performance evaluation, covering the period from February to June 2006, reiterated Medina's concerns about Walder's "excessive" "lateness's and absences" rated her "unsatisfactory," and recommended that Human Resources review her "employment status."  (Velez Aff. Ex. J: 6/6/06 Performance Review.)[4/]

On May 14, 2006, Walder filed a charge of employment discrimination with the New York State Division of Human Rights ("NYSDHR").  (Velez Aff. Ex. K: Walder NYSDHR Compl.) Specifically, Walder complained of an "unequal distribution of work between the male[] and female[]" TAs.  (NYSDHR Compl. at 2.)  According to Walder, certain male  TAs were allowed to perform "coach duties during instruction period," and were "encouraged" to "do college work during district time."  (Id.)  In contrast, according to Walder, the female TAs were told they had to "stay in [their] classroom assignment at all times" and were never "ask[ed] to stay late and supervise games for extra money."  (Id.)  Moreover, while Walder asserted that male TAs were allowed to "adjust [their] school day schedule in order to meet duties of coaching" or to allow "more time to study," Walder was given no such "special provision[]."  (Id.)  Walder was assigned a first period class even though she had previously been granted a "late entry" to accommodate her lengthy commute.  (Id.) Finally, although Walder was "frequently" asked to explain her absences and had to provide "documentation to collaborate [her] sickness[,] . . . male employees d[id]n't have to prove anything";

---

[4/]    According to Walder, tenured TAs were only "supposed to get evaluated once a year," so the second performance review "was not a legitimate evaluation."  (Walder Dep. at 64-70.) Accordingly, Walder did not believe this evaluation should be included in her personnel file and did not bother to submit a rebuttal.  (Walder Dep. at 64-70.)

they could simply "enter the building and leave at various time[s] without permission." (NYSDHR Compl. at 2-3.)[5]

On August 28, 2006, the EEOC "clos[ed] its file" and issued a right to sue letter, because "[b]ased upon its investigation, the EEOC [was] unable to conclude that the information obtained establishe[d] violations of the statutes." (Am. Compl. Ex. I: 8/28/06 EEOC Right to Sue Ltr.; see also Defs. & Walder Rule 56.1 Stmts. ¶ 8.)

Upon her return to work in September 2006 (Walder Dep. at 87-89), Walder was informed that because she did not have a sick leave balance of ten days as of June 30, 2006, she was not eligible for annualized pay. (Defs. & Walder Rule 56.1 Stmts. ¶ 9; Walder Dep. at 86-89; Am. Compl. Ex. F: 9/12/06 Retleff Ltr. to Walder.) Instead, Walder would be paid on an hourly basis for work actually performed. (Walder Dep. at 86-92; 9/12/06 Retleff Ltr. to Walder; Defs. & Walder Rule 56.1 Stmts. ¶ 9.)[6]

Walder's illnesses persisted throughout the fall semester,[7] and on December 14, 2006, she requested a second FMLA leave of absence. (Walder Dep. at 36, 93, 108; Defs. & Walder Rule

---

[5]    Walder's cousin, Tina Edwards, who worked as Medina's secretary, stated that she received sports-related telephone calls for a male teaching assistant, who also was a sports coach, and if the call was important, the male teaching assistant came to the office for the call. (Dkt. No. 42: Nicolazzo Aff. Ex. B: Edwards Aff. ¶¶ 2, 4, 9-12.) Edwards admitted, however, that "the length of the call wasn't long." (Edwards Aff. ¶ 12.)

[6]    Walder complained that several other TAs who also had deficient sick leave balances continued to be paid on an annualized basis, but was told by Dr. Lenora Boehlert, Assistant Superintendent for Human Resources, that "everybody's situation is different" and that she could "choose to do whatever [she] want[ed] for each different situation." (Walder Dep. at 86-92.)

[7]    Walder missed thirty-three school days between September 6, 2006 and November 30, 2006. (Velez Aff. Ex. H: Walder Attendance Records.)

56.1 Stmts. ¶ 10; Velez Aff. Ex. G:12/11/06 Walder Email to Boehlert & 12/14/06 Walder FMLA

Request Form.)   After initially requesting more medical information from Walder, the WPSD

"allowed her to take the [FMLA] leave." (Defs. & Walder Rule 56.1 Stmts. ¶ 10.)[8/]

       At the same time Walder made her FMLA leave request, she applied for "Health

Leave at Half Pay." (12/11/06 Walder Email; Walder Dep.at 35-37, 92-93; Defs. & Walder Rule

56.1 Stmts. ¶ 11.)  Pursuant to Article V, Section 1(g) of the Collective Bargaining Agreement,

"[u]pon recommendation of the Superintendent, leaves for personal health reasons may be granted

for a maximum period of one (1) year at half-pay to Civil Service employees who have completed

at least seven (7) years of satisfactory service in the school system."  (Velez Aff. Ex. F: Collective

Bargaining Agreement at 11; see Defs. & Walder Rule 56.1 Stmts. ¶ 12.)  On December 18, 2006,

---

[8/]    Walder had submitted a note from Dr. Dean Chang stating that she suffered from "Chronic
Fatigue" but  was "medically cleared to return to work . . . on March 1, 2007."  (Velez Aff.
Ex. G: 12/12/06 Dr. Chang Note.)  The WPSD took the position, however, that Dr. Chang's
note did not meet FMLA's physician certification requirements.  (See Velez Aff. Ex. G:
1/19/07 Mountanos Ltr. to Walder; Defs. Rule 56.1 Stmt. ¶ 10.)  Specifically, the WPSD
stated that Dr. Chang's note failed to:  (1) state whether Walder's condition satisfied the
Department of Labor's "definition for chronic conditions"; (2) "describe the medical facts
which support [Dr. Chang's] certification concerning [Walder's] inability to report for work";
(3) "inform the District of the approximate date the condition commenced and [its] probable
duration"; (4) state whether Walder was "presently incapacitated and the likely duration and
frequency of episodes of incapacity"; and (5) state whether Walder was "unable to perform
work of any kind."  (1/19/07 Mountanos Ltr. at 2; compare 4/8/05 FMLA Request Form
¶¶ 3-8, with 12/12/06 Dr. Chang Ltr.)  Walder threatened to "fight [her] case through the
Media and other legal actions."  (Velez Aff. Ex. M: 12/16/06 Walder Email & 1/11/07
Walder Email.)  In Walder's view, she did not "need [m]edical certification [but could]
request the leave based upon [her] own determination of [her] illness and disability."
(1/11/07 Walder Email.)  Because Walder could not understand why the WPSD had turned
an "overwhelming[ly] simple process . . . into something very stressful" (12/16/06 Walder
Email), she  concluded that the delay in deciding her claim constituted "harassment and
retaliation due to the legal matters that [she had] with the school District" (1/11/07 Walder
Email).

WPSD Superintendent Timothy P. Connors denied Walder's request.  (Velez Aff. Ex. N: 12/18/06 Connors Ltr. to Walder.)   Walder contacted Connors to demand an explanation for her denial. (Walder Dep. at 93, 95-96, 108-09.) On January 31, 2007, Connors responded that health leave with half pay "is reserved for those individuals who are suffering from a long term catastrophic illness" and Walder's "current illness" did not qualify her for that benefit.  (Velez Aff. Ex. O: 1/31/07 Connors Ltr. to Walder.)   Walder took exception to Connors' explanation because the Collective Bargaining Agreement made no mention of "catastrophic illness."  (Walder Dep. at 92-96.)  Walder warned Connors that "if you are going to deny me based on something in the bargaining agreement, make sure that's what's in the bargaining agreement."  (Walder Dep. at 94-95.)

Because Walder had "called [Connors] on something he said that wasn't true," she believed the WPSD was "after [her]."  (Walder Dep. 115-16.)  Because "of [her] health and [her] safety," Walder opted to resign rather than return to work when her FMLA leave ended.  (Walder Dep. 115-16; Defs. & Walder Rule 56.1 Stmts. ¶ 14.)  Walder verbally informed the WPSD of her intent to resign, and at a "special meeting on Monday, June 25, 2007 the White Plains Board of Education officially accepted [Walder's] resignation . . . , effective November 30, 2006."  (Velez Aff. Ex. P: 7/11/07 Connors Ltr. to Walder.)  Walder commenced her lawsuit on or about January 11, 2007.  (Defs. & Walder Rule 56.1 Stmts. ¶ 15.)

## ANALYSIS

**I.**     **SUMMARY JUDGMENT STANDARD**

      **A.**     **The General Summary Judgment Standard**

      Rule 56(c) of the Federal Rules of Civil Procedure provides that summary "judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Lang v. Ret. Living Pub. Co., 949 F.2d 576, 580 (2d Cir. 1991).

      The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof. See, e.g., Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53.

      To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Instead, the non-moving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); accord, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587, 106 S. Ct.

at 1356; <u>Weinstock</u> v. <u>Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir. 2000) (At summary judgment, "[t]he time has come . . . 'to put up or shut up.'") (citations omitted), <u>cert. denied</u>, 540 U.S. 811, 124 S. Ct. 53 (2003).

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. at 255, 106 S. Ct. at 2513.[9] The Court draws all inferences in favor of the nonmoving party only after determining that such inferences are reasonable, considering all the evidence presented. <u>See, e.g.</u>, <u>Apex Oil Co.</u> v. <u>DiMauro</u>, 822 F.2d 246, 252 (2d Cir.), <u>cert. denied</u>, 484 U.S. 977, 108 S. Ct. 489 (1987). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." <u>Chambers</u> v. <u>TRM Copy Ctrs. Corp.</u>, 43 F.3d at 37.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact. <u>See, e.g.</u>, <u>Donahue</u> v. <u>Windsor Locks Bd. of Fire Comm'rs</u>, 834 F.2d 54, 58 (2d Cir. 1987); <u>Knight</u> v. <u>U.S. Fire Ins. Co.</u>, 804 F.2d 9, 11 (2d Cir. 1986), <u>cert. denied</u>, 480 U.S. 932, 107 S. Ct. 1570 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. <u>See, e.g.</u>, <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. at 248, 106 S. Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly

---

[9]        <u>See also</u>, <u>e.g.</u>, <u>Feingold</u> v. <u>N.Y.</u>, 366 F.3d 138, 148 (2d Cir. 2004); <u>Chambers</u> v. <u>TRM Copy Ctrs. Corp.</u>, 43 F.3d at 36; <u>Gallo</u> v. <u>Prudential Residential Servs., Ltd. P'ship</u>, 22 F.3d at 1223.

preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted." Id. at 248, 106 S. Ct. at 2510 (citations omitted); see also, e.g., Knight v. U.S. Fire Ins. Co., 804 F.2d at 11-12.

**B.    Additional Summary Judgment Standards in Employment Discrimination Cases**

When a case turns on the intent of one party, as employment discrimination claims often do, a "trial court must be cautious about granting summary judgment." Gallo v. Prudential Residential Servs., Ltd. P'Ship, 22 F.3d 1219, 1224 (2d Cir. 1994).[10]  Because the employer rarely leaves direct evidence of its discriminatory intent, the Court must carefully comb the available evidence in search of circumstantial proof to undercut the employer's explanations for its actions. E.g., Gallo v. Prudential Residential Srvs., Ltd. P'Ship, 22 F.3d at 1224. "[S]ummary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial. There must either be a lack of evidence in support of the plaintiff's position or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." Danzer v. Norden Sys., Inc., 151 F.3d 50, 54 (2d Cir. 1998) (citations omitted).  Nonetheless, when an employer provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination, the Court may

---

[10]    Accord, e.g., Feingold v. N.Y., 366 F.3d 138, 149 (2d Cir. 2004); Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998) ("in an employment discrimination case when, as here, the employer's intent is at issue, the trial court must be especially cautious about granting summary judgment"); McLee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir. 1997) ("caution must be exercised in granting summary judgment where motive is genuinely in issue"); Cardoza v. Healthfirst, Inc., 210 F. Supp. 2d 224, 227 (S.D.N.Y. 1999); see also, e.g., Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 40 (2d Cir. 1994).

conclude that no material issue of fact exists and it may grant summary judgment to the employer.

E.g., Budde v. H&K Distrib. Co., No. 99-9449, 216 F.3d 1071 (table), 2000 WL 900204 at *1 (2d

Cir. June 29, 2000); Stern v. Trustees of Columbia Univ., 131 F.3d 305, 312 (2d Cir. 1997); Meloff

v. N.Y. Life Ins. Co., 51 F.3d 372, 375 (2d Cir. 1995).

             In other words, to defeat summary judgment, "the plaintiff's admissible evidence must

show circumstances that would be sufficient to permit a rational finder of fact to infer that the

defendant's employment decision was more likely than not based in whole or in part on

discrimination." Stern v. Trustees of Columbia Univ., 131 F.3d at 312; see, e.g., Schnabel v.

Abramson, 232 F.3d 83, 90-91 (2d Cir. 2000); Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d

Cir. 2000) (The question on summary judgment is "whether the evidence, taken as a whole, supports

a sufficient rational inference of discrimination.  To get to the jury, it is not enough . . . to disbelieve

the employer; the factfinder must also believe the plaintiff's explanation of intentional

discrimination.") (internal quotations & alterations omitted), cert. denied, 540 U.S. 811, 124 S. Ct.

53 (2003); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996) (plaintiff must

"produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the

legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than

not [discrimination] was the real reason for the discharge'").[11/]  Indeed, the Second Circuit "went out

of [its] way to remind district courts that the 'impression that summary judgment is unavailable to

defendants in discrimination cases is unsupportable.'"  Weinstock v. Columbia Univ., 224 F.3d at

41.

---

[11/]    See also, e.g., Budde v. H&K Distrib. Co., 2000 WL 900204 at *1; Scaria v. Rubin, 94 Civ.
3333, 1996 WL 389250 at *5 (S.D.N.Y. July 11, 1996) (Peck, M.J.), aff'd, 117 F.3d 652, 654
(2d Cir. 1997).

## II.   GOVERNING LEGAL STANDARD FOR TITLE VII CASES

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §§ 2000e-2(a)(1).

Under the familiar McDonnell Douglas burden-shifting analysis, the plaintiff has the burden at the outset of "proving by the preponderance of the evidence a prima facie case of discrimination." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1093 (1981); see, e.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, 120 S. Ct. 2097, 2106 (2000); McDonnell Douglas Corp. v. Green, 411 U.S. at 802, 93 S. Ct. at 1824.[12]/ Establishment of a prima facie case "'in effect creates a presumption that the employer unlawfully discriminated against the employee.'" St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 506, 113 S. Ct. at 2747 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 254, 101 S. Ct. at 1094).[13]/

---

[12]/   See also, e.g., Raytheon Co. v. Hernandez, 540 U.S. 44, 50 n.3, 124 S. Ct. 513, 517 n.3 (2003); O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 310, 116 S. Ct. 1307, 1309 (1996); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507, 113 S. Ct. 2742, 2746-47 (1993); Leibowitz v. Cornell Univ., 584 F.3d at 498; Dorfman v. Doar Comm., Inc., 2009 WL 648524 at *1; Desalvo v. Volhard, 312 Fed. Appx. 394, 396 (2d Cir.), cert. denied, 130 S. Ct. 70 (2009); Fall v. N.Y.S. United Teachers, 289 Fed. Appx. at 420-21; Nader v. ABC Television, Inc., 150 Fed. Appx. at 55; Mandell v. Cnty. of Suffolk, 316 F.3d 368, 377-78 (2d Cir. 2003); Mario v. P&C Food Mkts., Inc., 313 F.3d 758, 767 (2d Cir. 2002); Collins v. N.Y.C. Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002); Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).

[13]/   See also, e.g., Mandell v. Cnty. of Suffolk, 316 F.3d at 380; Mario v. P&C Food Mkts., Inc., 313 F.3d at 767; Scaria v. Rubin, 117 F.3d 652, 654 (2d Cir. 1997).

Once a plaintiff claiming employment discrimination establishes a prima facie case, the burden shifts to the defendant to rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for its employment decision.  E.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 142-43, 120 S. Ct. at 2106; McDonnell Douglas Corp. v. Green, 411 U.S. at 802, 93 S. Ct. at 1824.[14/]  The burden on the defendant at this phase is one of production rather than persuasion.  E.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 142, 120 S. Ct. at 2106.[15/]

"Although intermediate evidentiary burdens shift back and forth under [the McDonnell Douglas] framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 143, 120 S. Ct. at 2106.

---

[14/]    See also, e.g., Raytheon Co. v. Hernandez, 540 U.S. at 50 n.3, 124 S. Ct. at 517 n.3; O'Connor v. Consol. Coin Caterers Corp., 517 U.S. at 310, 116 S. Ct. at 1309; St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 506-07, 113 S. Ct. at 2747; Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 253-54, 101 S. Ct. at 1093-94; Leibowitz v. Cornell Univ., 584 F.3d at 498-99; Dorfman v. Doar Comm., Inc., 2009 WL 648524 at *1; Desalvo v. Volhard, 312 Fed. Appx. at 396; Fall v. N.Y.S. United Teachers, 289 Fed. Appx. at 421; Nader v. ABC Television, Inc., 150 Fed. Appx. at 55; Feingold v. N.Y., 366 F.3d 138, 152 (2d Cir. 2004); Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003); Mandell v. Cnty. of Suffolk, 316 F.3d at 380; Mario v. P&C Food Mkts., Inc., 313 F.3d at 767; Schnabel v. Abramson, 232 F.3d at 88; Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003); Stein v. Trustees of Columbia Univ., 131 F.3d 305, 312 (2d Cir. 1997); Scaria v. Rubin, 117 F.3d at 654; Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 38.

[15/]    See also, e.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 507, 113 S. Ct. at 2747; Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 257, 101 S. Ct. at 1096; Terry v. Ashcroft, 336 F.3d at 144 n.17; Scaria v. Rubin, 117 F.3d at 654.

If the defendant articulates a non-discriminatory reason, the McDonnell Douglas burden-shifting framework drops out of the picture, and the plaintiff must show that the adverse employment decision more likely than not was motivated in whole or part by discriminatory reasons. E.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 142-43, 120 S. Ct. at 2106.[16] "Moreover, although the presumption of discrimination 'drops out of the picture' once the defendant meets its burden of production, . . . the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 143, 120 S. Ct. at 2106 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 255 n.10, 101 S. Ct. at 1095 n.10).

The Supreme Court in 2000 clarified the standard at this stage of the McDonnell Douglas analysis:

> [I]n St. Mary's Honor Center . . . . we held that the factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not compel judgment for the plaintiff. The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct." In other words, "[i]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination."

---

[16]     See also, e.g., Raytheon Co. v. Hernandez, 124 S. Ct. at 517 n.3; St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 510, 113 S. Ct. at 2749; Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 253, 101 S. Ct. at 1093-94; Leibowitz v. Cornell Univ., 584 F.3d at 499; Desalvo v. Volhard, 312 Fed. Appx. at 396; Fall v. N.Y.S. United Teachers, 289 Fed. Appx. at 421; Feingold v. New York, 366 F.3d at 152; Mandell v. Cnty. of Suffolk, 316 F.3d at 380-81; Mario v. P&C Food Mkts., Inc., 313 F.3d at 767; Weinstock v. Columbia Univ., 224 F.3d at 42; Scaria v. Rubin, 117 F.3d at 654.

In reaching this conclusion, however, we reasoned that it is <u>permissible</u> for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation. . . .

Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.  In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.  Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt."  Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.  Thus, <u>a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated</u>.

<u>This is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability</u>.  Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.  For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.  To hold otherwise would be effectively to insulate an entire category of employment discrimination cases from review under Rule 50 [or Rule 56], and we have reiterated that trial courts should not "'treat discrimination differently from other ultimate questions of fact.'"

<u>Whether judgment as a matter of law [or summary judgment] is appropriate in any particular case will depend on a number of factors.  Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law</u>.

<u>Reeves</u> v. <u>Sanderson Plumbing Prods., Inc.</u>, 530 U.S. at 146-49, 120 S. Ct. at 2108-09 (emphasis

added & citations omitted).

After <u>Reeves</u>, the Second Circuit has made clear that merely proving a prima facie case and disproving the employer's explanation for its conduct at the third step of the <u>McDonnell Douglas</u> analysis will not preclude summary judgment in all cases; rather, a case-by-case analysis is necessary:

> In examining the impact of <u>Reeves</u> on our precedents, we conclude that <u>Reeves</u> prevents courts from imposing a <u>per se</u> rule requiring <u>in all instances</u> that a [Title VII] claimant offer more than a prima facie case and evidence of pretext. . . . But the converse is not true; following <u>Reeves</u>, <u>we decline to hold that no [Title VII] defendant may succeed on a summary judgment motion so long as the plaintiff has established a prima facie case and presented evidence of pretext. Rather, we hold that the Supreme Court's decision in Reeves clearly mandates a case-by-case approach</u>, with a court examining the entire record to determine whether the plaintiff could satisfy his "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff."

<u>Schnabel</u> v. <u>Abramson</u>, 232 F.3d at 90 (emphasis added).[17]

---

[17]    <u>See also</u>, <u>e.g.</u>, <u>Butts</u> v. <u>NYC Dep't of Hous. Pres. & Dev.</u>, 307 Fed. Appx. 596, 599 (2d Cir. 2009); <u>Cross</u> v. <u>N.Y.C. Transit Auth.</u>, 417 F.3d 241, 248 (2d Cir. 2005); <u>Feingold</u> v. <u>N.Y.</u>, 366 F.3d at 152; <u>Roge</u> v. <u>NYP Holdings, Inc.</u>, 257 F.3d 164, 167-68 (2d Cir. 2001); <u>Abdu-Brisson</u> v. <u>Delta Air Lines, Inc.</u>, 239 F.3d 456, 469-70 (2d Cir.), <u>cert. denied</u>, 534 U.S. 993, 122 S. Ct. 460 (2001); <u>James</u> v. <u>N.Y. Racing Ass'n</u>, 233 F.3d 149, 156-57 (2d Cir. 2000); <u>Weinstock</u> v. <u>Columbia Univ.</u>, 224 F.3d at 42 ("In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination."); <u>Aksamit</u> v. <u>772 Park Ave. Corp.</u>, 00 Civ. 5520, 2003 WL 22283813 at *6 (S.D.N.Y. Oct. 2, 2003) ("[A] plaintiff's establishment of a prima facie case and rebuttal of a nondiscriminatory reason for the adverse action do not save the plaintiff from summary judgment when there is insufficient evidence of discrimination."), <u>aff'd</u>, 128 Fed. Appx. 204 (2d Cir. 2005); <u>Weiser</u> v. <u>Forest Pharm., Inc.</u>, 99 Civ. 1809, 2001 WL 293951 at *7-8 (S.D.N.Y. Mar. 26, 2001); <u>Tanay</u> v. <u>Saint Barnabas Hosp.</u>, 99 Civ. 9215, 2001 WL 262695 at *4 (S.D.N.Y. Mar. 15, 2001); <u>Connell</u> v. <u>Consol. Edison Co.</u>, 109 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2000) (Chin, D.J.) ("The key is whether there is sufficient evidence in the record – whether it consists of just the prima facie case and proof of pretext alone or those items together with additional evidence – to support an inference of discrimination.").

### III.   DEFENDANT IS GRANTED SUMMARY JUDGMENT DISMISSING WALDER'S DISPARATE IMPACT TITLE VII GENDER DISCRIMINATION CLAIM

Walder alleges that the WPSD discriminated against her through "disparate treatment" on the basis of her gender.  (Dkt. No. 8: Am. Compl. at 1-2; Dkt. No. 40: Walder Br. at 2-5.) Specifically, Walder alleges that certain male colleagues were "granted late entry or early dismissal due to unrelated medical issues" whereas her request for  "late entry" with "no first period class" was denied.  (Am. Compl. at 1-2.)  Similarly, Walder alleges that while certain male TAs "were allowed to have free periods to accommodate their personal needs," female employees were given "full schedule[s] with minimum breaks."  (Am. Compl. at 1-2.)  Walder further alleges that male TAs were permitted to "check e-mail during instructional time" or  otherwise do "as they pleased," but female employees were "told they could be fired if caught on the computer" and were reprimanded if they did not "walk around the classroom."  (Am. Compl. at 2.)  Finally, Walder asserts that she was "constantly harassed . . . concerning [her] illness" and received an unsatisfactory performance evaluation "based on [her] attendance rather than job performance."  (Am. Compl. Ex. E: Walder Ltr. to Michelle Trataros.)

#### A.   Walder's Allegations Fail to Establish a Prima Facie Case of Discrimination

It is well settled that a plaintiff asserting a claim under Title VII must first establish a prima facie case of discrimination.  (See cases cited at page 13 above.)  A Title VII plaintiff meets that burden by showing that:  (1) she was within a protected group, (2) she was qualified for the functions of her position, (3) she suffered an adverse employment action, and (4) that the action took place under circumstances giving rise to an inference of discrimination.  See, e.g., Leibowitz v. Cornell Univ., 584 F.3d 487, 498 (2d Cir. 2009); Crawford v. Dep't of Investigation, 324 Fed. Appx.

139, 141 (2d Cir. 2009); <u>Danzy</u> v. <u>Chao</u>, 177 Fed. Appx. 133, 134 (2d Cir. 2006); <u>Roge</u> v. <u>NYP</u> <u>Holdings, Inc.</u>, 257 F.3d 164, 168 (2d Cir. 2001); <u>Hollander</u> v. <u>Am. Cynamid Co.</u>, 172 F.3d 192, 199 (2d Cir.), <u>cert. denied</u>, 528 U.S. 965, 120 S. Ct. 399 (1999).

 For purposes of this motion, WPSD concedes that Walder "is a member of a protected class and that she was qualified for her job." (Dkt. No. 31: WPSD Br. at 4.) Walder's sex discrimination claim, however, fails to establish that she suffered an adverse employment action or to provide any admissible evidence giving rise to an inference of discrimination.

### 1. Adverse Employment Action

 The Second Circuit has held that "[t]o constitute an adverse employment action in violation of Title VII, a change in working conditions must be 'materially adverse.'" <u>Patrolmen's</u> <u>Benevolent Assoc.</u> v. <u>City of N.Y.</u>, 310 F.3d 43, 51 (2d Cir. 2002) (quoting <u>Galabya</u> v. <u>N.Y.C. Bd.</u> <u>of Educ.</u>, 202 F.3d 636, 640 (2d Cir. 2000)), <u>cert. denied</u>, 538 U.S. 1032, 123 S. Ct. 2076 (2003).

> A materially adverse change "must be more disruptive than a mere inconvenience or an alteration of job responsibilities" and "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.

<u>Patrolmen's Benevolent Assoc.</u> v. <u>City of N.Y.</u>, 310 F.3d at 51; <u>accord</u>, <u>e.g.</u>, <u>Lewis</u> v. <u>City of Buffalo</u> <u>Police Dep't</u>, 311 Fed. Appx. 417, 420 (2d Cir. 2009) ("To show such an adverse action, a plaintiff must point to evidence of more than inconvenience; she must show an action that rises to the level of 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.'"); <u>Staff</u> v. <u>Pall Corp.</u>, No. 03-7002, 76 Fed. Appx. 366,

368-69, 2003 WL 22056230 at *2 (2d Cir. Sept. 4, 2003); <u>Terry</u> v. <u>Ashcroft</u>, 336 F.3d 128, 138 (2d Cir. 2003).[18]

      Walder's conclusory allegations that she was not given a free-period, denied "late entry," not permitted to check email, reprimanded by her supervisors and scrutinized for her sporadic attendance do not amount to "adverse employment actions" because they do not constitute materially adverse changes in the terms, conditions or privileges of her employment.  <u>See</u>, <u>e.g.</u>, <u>Williams</u> v. <u>N.Y.C. Hous. Auth.</u>, 335 Fed. Appx. 108, 110 (2d Cir. 2009) ("Neither [defendant's] denial of [plaintiff's] request for a leave of absence, nor its deduction of a small amount from her salary, nor its issuance of two counseling memoranda constituted an adverse employment action.");  <u>Stoddard</u> v. <u>Eastman Kodak Co.</u>, 309 Fed Appx. 475, 478-79 (2d Cir. 2009) (Employee's "claim of excessively harsh criticism by her boss, and inadequate office supplies and space, do not constitute adverse employment actions."  No disparate impact claim based on a "single memorandum criticizing [plaintiff's] job performance," since memorandum did not "result[] in any alteration of her working conditions or job responsibilities.");  <u>Hall</u> v. <u>N.Y.C.  Dep't of Transp.</u>, 701 F. Supp. 2d 318, 335-36

---

[18]    <u>See also</u>, <u>e.g.</u>, <u>Burlington N. & Santa Fe Ry.</u> v. <u>White</u>, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006) ("We speak of material adversity because we believe it is important to separate significant from trivial harms. Title VII . . . does not set forth 'a general civility code for the American workplace.'") (quoting <u>Oncale</u> v. <u>Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75, 80, 118 S. Ct. 998, 1002 (1998)); <u>La Grande</u> v. <u>DeCrescente Distrib. Co.</u>, Nos. 08-3010-cv, 09-1789-cv, 2010 WL 1049320 at *4 (2d Cir. Mar. 23, 2010) ("Everyday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions within the meaning of Title VII."); <u>Wanamaker</u> v. <u>Columbian Rope Co.</u>, 108 F.3d 462, 466 (2d Cir. 1997) ("'not every unpleasant matter short of [discharge or demotion] creates a cause of action.'") (brackets in original); <u>Diaz</u> v. <u>Weill Med. Ctr. of Cornell Univ.</u>, 02 Civ. 7380, 2004 WL 285947 at *19 (S.D.N.Y. Feb. 13, 2004) (Peck, M.J.) (& cases cited therein), <u>aff'd</u>, 138 Fed. Appx. 362 (2d Cir. 2005).

(E.D.N.Y. 2010) ("Even assuming that plaintiff was subjected to excessive scrutiny, . . . criticism and reprimands, where, as here, such conduct did not lead to materially adverse employment consequences, it is not considered actionable disparate treatment."); Pierre v. N.Y.S. Dep't of Corr. Servs., 05 Civ. 0275, 2009 WL 1583475 at *13 (S.D.N.Y. June 1, 2009) (Defendants' alteration of "the unofficial time at which Plaintiff would eat her lunch" did not constitute an adverse employment action.); Braithwaite v. Kingsboro Psychiatric Ctr., No. 07-CV-0127, 2009 WL 2596486 at *6 (E.D.N.Y. Aug. 21, 2009) (denial of shift transfer does not constitute an adverse employment action); Cramer v. Fedco Auto. Components Co., No. 01-CV-0757, 2005 WL 839671 at *9, 11 (W.D.N.Y. Apr. 12, 2005) (That defendant "enforced break time and phone usage policies in a discriminatory manner, refused to grant [plaintiff] time off on a few occasions and made one sarcastic comment" did not constitute adverse employment actions because "[s]uch minor inconveniences, absent some other negative result, are not, as a matter of law, adverse employment actions."); Gibbs v. City of N.Y., No. 02-CV-2424, 2005 WL 497796 at *9 (E.D.N.Y. Jan. 21, 2005) (denial of extra fifteen minutes of lunch break and permission to eat at desk allegedly given to other employees was not adverse employment action).[19]

---

[19]   See also, e.g., Hill v. Rayboy-Brauestein, 467 F. Supp. 2d 336, 354-55 (S.D.N.Y. 2006) ("micro-management" and "excessive scrutiny and review by [plaintiff's] supervisors" were not adverse employment actions, particularly where plaintiff's only evidence of disparate treatment was "her own perception that she was treated differently."); Morrison v. Potter, 363 F. Supp. 2d 586, 591 (S.D.N.Y. 2005) ("being called into supervisor's office to discuss work issues" is not an adverse employment action, even if it causes the employee embarrassment or anxiety); Fridia v. Henderson, 99 Civ. 10749, 2000 WL 1772779 at *7 (S.D.N.Y. Nov. 30, 2000) (Plaintiff's "allegations of excessive work, denials of requests for leave with pay and [defendant's] general treatment of [plaintiff], without more, do not amount to 'adverse employment actions' because they are not materially adverse changes in the terms, conditions or privileges of her employment.").

To the extent Walder claims her January 12, 2006 performance evaluation constituted an adverse employment action, courts in this Circuit have held that "[i]t is well-settled that negative evaluations alone, without any accompanying adverse consequences, such as a demotion, diminution of wages, or other tangible loss, do not constitute adverse employment actions." Gordon v. N.Y.C. Bd. of Educ., 01 Civ. 9265, 2003 WL 169800 at *6 (S.D.N.Y. Jan. 23, 2003) (citing cases); see also, e.g., Ragin v. East Ramapo Cent. School Dist., 05 Civ. 6496, 2010 WL 1326779 at *17-18 (S.D.N.Y. Mar. 31, 2010) ("a negative or critical evaluation will not constitute an adverse employment action unless the evaluation is accompanied by other adverse consequences."); Martinez-Santiago v. Zurich N. Am. Ins. Co., 07 Civ. 8676, 2010 WL 184450 at *11 (S.D.N.Y. Jan. 15, 2010) ("A reasonable employee would not be dissuaded from filing a discrimination complaint merely because her supervisor gave her constructive employment-based criticism."); Fincher v. Depository Trust & Clearing Corp., 06 Civ. 9959, 2008 WL 4308126 at *4 (S.D.N.Y. Sept. 17, 2008) ("'[N]egative evaluations alone . . . do not constitute adverse employment actions.'"), aff'd, 604 F.3d 712 (2d Cir. 2010); Jackson v. City Univ. of N.Y., 05 Civ. 8712, 2006 WL 1751247 at *4 (S.D.N.Y. June 23, 2006) ("As to various negative evaluations plaintiff may have received, it is well-established that negative evaluations alone do not constitute an adverse employment action. . . .") Walder has not alleged how the January 12, 2006 performance evaluation negatively impacted the conditions of her employment.

Importantly, Walder was never fired, demoted, or otherwise deprived of the pay, benefits or title for which she was eligible. (See pages 2-8 above.) To the contrary, Walder was given permission to report to work later than her scheduled time and was granted FMLA medical leave, despite WPSD's perceived deficiencies in her paperwork. (See pages 3-4, 6-7 above.) Indeed,

Walder's allegation of adverse actions amounts merely to her own belief that she was treated unfairly. See, e.g., Gelin v. Geithner, 06 Civ. 10176, 2009 WL 804144 at *12 (S.D.N.Y. Mar. 26, 2009) ("Plaintiff's 'subjective dissatisfaction with assignments' simply does not rise to the level of adverse employment action."), aff'd, No. 09-1759-CV, 2010 WL 1853925 (2d Cir. May 11, 2010); Blessing v. J.P. Morgan Chase & Co., 394 F. Supp. 2d 569, 577 (S.D.N.Y. 2005) (employee's subjective dissatisfaction with employment action does not constitute evidence of adverse employment action); cf. Williams v. N.Y.C. Health & Hosp. Corp., No. 08-CV-4132, 2010 WL 2836356 at *4 (E.D.N.Y. July 16, 2010) (Complaint that "'males got paid when they were out sick but females were not,'" held not to contain "sufficient facts to 'nudge [] [her] claim [] across the line from conceivable to plausible.'").

Accordingly, the Court finds that Walder's allegations do not rise to the level that would constitute a materially adverse change, and thus she has not suffered an adverse employment action.

## 2.   **Discriminatory Animus**

Even had Walder suffered an adverse employment action, she has not adequately demonstrated the fourth element of a prima facie Title VII employment discrimination claim, i.e., that the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  (See cases cited at pages 18-19 above.)

In discussing the events leading up to her resignation, Walder does not allege even one fact that connects her gender to the perceived injustices.  (See pages 2-8 above.)  Instead, Walder relies on conclusory allegations that males were given "[f]avorable treatment."  (Dkt. No. 8: Am.

Compl. at 2.)[20] Such conclusory allegations are insufficient. See, e.g., Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 101 (2d Cir. 2010) ("a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment."); Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases."), cert. denied, 484 U.S. 829, 106 S. Ct. 91 (1985); Baptiste v. Cushman & Wakefield, 03 Civ. 2102, 2007 WL 747796 at *7 (S.D.N.Y. Mar. 7, 2007) ("Plaintiff's mere subjective belief she was discriminated against because of her race . . . cannot sustain a charge of race discrimination."); Chan v. NYU Downtown Hosp., 03 Civ. 3003, 2006 WL 345853 at *5-6 (S.D.N.Y. Feb. 14, 2006) (conclusory assertions that other employees were treated more favorably are not enough to defeat summary judgment where plaintiff also failed to show she was similarly situated to those employees in terms of job duties and responsibilities.); Patterson v. Newspaper & Mail Deliverers' Union, 73 Civ. 4278, 2005 WL 3750749 at *16 (S.D.N.Y. July 13, 2005) ("A party's own self-serving conclusory statements cannot sustain a Title VII claim of discrimination."); Dean v. Westchester Cnty. Dist. Attorney's Office, 119 F. Supp. 2d 424, 430 (S.D.N.Y. 2000) ("[T]he mere fact that [plaintiff] believed white, male employees similarly situated were not disciplined for similar professional failures is not a sufficient basis to infer discrimination.").

---

[20]     Walder does not specifically identify any male TA who received "late arrival" or other allegedly preferential treatment.  (See pages 5-6 above.)  While Walder filed her case pro se, she was represented by counsel at the time of defendant's summary judgment motion.  The only somewhat specific allegation is from Walder's cousin, Tina Edwards, that a male TA who was a sports coach took a short telephone call about his coaching duties (see page 6 n.5 above), fails to show disparate treatment or discriminatory actions.

Any inference of sex discrimination is further undermined by the fact that Medina, the supervisor who allegedly discriminated against Walder as to the terms of her duties, is a woman. See, e.g., Baguer v. Spanish Broad. Sys., Inc., 04 Civ. 8393, 2010 WL 2813632 at *11 (S.D.N.Y. July 12, 2010) ("Courts draw an inference against discrimination where the person taking the adverse action is in the same protected class as the effected employee."); Eder v. City of N.Y., 06 Civ. 13013, 2009 WL 362706 at *8 (S.D.N.Y. Feb. 12, 2009) (Plaintiff's "immediate supervisor who assessed Plaintiff's performance and determined that it was lacking, are members of the same protected class. Thus, any inference of discrimination, without additional evidence, is not warranted."); Tucker v. N.Y.C., 05 Civ. 2804,  2008 WL 4450271 at *5 (S.D.N.Y. Sep. 30, 2008) ("[A]ny inference of race discrimination is further undermined by the fact that all three superintendents under whom [plaintiff] worked as well as three of his four direct supervisors at the DOE were also African-American."), aff'd, No. 08-5575-CV, 2010 WL 1838713 (2d Cir. May 10, 2010); Fosen v. N.Y. Times, 03 Civ. 3785, 2006 WL 2927611 at *5 (S.D.N.Y. Oct. 11, 2006) ("Any inference of discrimination was also critically undermined by the fact that the supervisors responsible for Plaintiff's termination" were part of the same protected class as plaintiff.); Morris v. N.Y.C. Dep't of Sanitation, 99 Civ. 4376, 2003 WL 1739009 at *7 (S.D.N.Y. Apr. 2, 2003) ("Where all decision-makers are members of a plaintiff's protected class, courts have found an inference against discriminatory intent."); Marlow v. Office of Court Admin., 820 F. Supp. 753, 757 (S.D.N.Y. Apr. 20, 1993), aff'd, 22 F.3d 1091 (2d Cir.), cert. denied, 513 U.S. 897, 115 S. Ct. 252 (1994); Toliver v. Cmty. Action Comm'n to Help the Econ., Inc., 613 F. Supp. 1070, 1074 (S.D.N.Y. 1985), aff'd, 800 F.2d 1128 (2d Cir.), cert. denied, 479 U.S. 863, 107 S. Ct. 217 (1986).

In any event, the WPSD has met its burden at the <u>McDonnell Douglas</u> second stage by articulating legitimate, non-discriminatory reasons rebutting Walder's accusations:  Walder was not given extra breaks because "[a]ll teaching assistants [were] required to work a full schedule" (Dkt. No. 32: Velez Aff. Ex. Q: Boehlert Aff. ¶ 3); "[t]eaching assistants who were released to coach students were still considered to be working a full schedule as they were working with students" (Boehlert Aff. ¶ 4); any teaching assistant "found by the District to not be working their shift would be disciplined " (Boehlert Aff. ¶ 5); despite her allegation to the contrary, Walder was granted a "late entry" (<u>see</u> page 3 above); and finally, Walder's January 12, 2006 "unsatisfactory" rating was due entirely to her frequent, and unexcused, absences (<u>see</u> page 4 above).  As discussed above, Walder has not established any "inference of discrimination," let alone the more demanding evidence required at the third <u>McDonnell Douglas</u> step, <u>i.e.,</u> that an adverse employment action more likely than not was motivated by discriminatory reasons.  (<u>See</u> cases cited at page 15 above.)

Accordingly, defendant WPSD's summary judgment motion is <u>GRANTED</u> dismissing Walder's Title VII gender discrimination claim.

## IV.  DEFENDANT IS GRANTED SUMMARY JUDGMENT DISMISSING WALDER'S TITLE VII RETALIATION CLAIM

Under Title VII, it is unlawful for an employer to "retaliate" by discriminating against an employee because the employee engaged in protected activity, that is, "has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a

charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); 29 U.S.C.S. 623(d).[21/]

"To succeed on a claim of retaliation, a plaintiff must show that 1) the employee engaged in a protected activity; 2) the employer was aware of that activity; 3) the employee suffered an adverse employment action; and 4) there was a causal connection between the protected activity and the adverse employment action." Blanco v. Brogan, 620 F. Supp. 2d 546, 553 (S.D.N.Y. 2009); accord, e.g., Kessler v. Westchester Cnty. Dep't of Soc. Servs., 461 F.3d at 205-06; Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002); Weixel v. Bd. of Educ., 287 F.3d 138, 148-49 (2d Cir. 2002); Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001); Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000); Munck v. New Haven Sav. Bank, 251 F. Supp. 2d 1078, 1085 (D. Conn. 2003).

The Supreme Court has explained:

The term "oppose," being left undefined by the statute, carries its ordinary meaning: "to resist or antagonize . . . ; to contend against; to confront; resist; withstand,"

---

[21/]    See, e.g., Sengillo v. Valeo Elec. Sys., Inc., 328 Fed. Appx. 39, 40-41 (2d Cir. 2009); Crawford v. Metro. Gov't of Nashville & Davidson County, 129 S. Ct. 846, 850 (2009); Richardson v. Comm'n on Human Rights & Opportunities, 532 F.3d 114, 120-21 (2d Cir. 2008), cert. denied, 130 S. Ct. 56 (2009); Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 241 (2d Cir. 2007); Kessler v. Westchester Cnty. Dep't of Soc. Servs., 461 F.3d 199, 205 (2d Cir. 2006); Terry v. Ashcroft, 336 F.3d 128, 140 (2d Cir. 2003); Diaz v. Weill Med. Ctr. of Cornell Univ., 02 Civ. 7830, 2004 WL 285947 at *21 (S.D.N.Y. Feb. 13, 2004) (Peck, M.J.), aff'd, 138 Fed. Appx. 362 (2d Cir. 2005); Minott v. Port Auth. of N.Y. & N.J., 116 F. Supp. 2d 513, 520, 524 (S.D.N.Y. 2000) ("Title VII defines protected activities as (1) an employee's opposition to any activity which is prohibited by Title VII, or (2) an employee's participation in any Title VII investigation or proceeding."); see also Manoharan v. Columbia Univ. College of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988) ("The objective of [the section prohibiting retaliation] is obviously to forbid an employer from retaliating against an employee because of the latter's opposition to an unlawful employment practice.").

Webster's New International Dictionary 1710 (2d ed.1958). Although these actions entail varying expenditures of energy, "RESIST frequently implies more active striving than OPPOSE." Ibid.; see also Random House Dictionary of the English Language 1359 (2d ed.1987) (defining "oppose" as "to be hostile or adverse to, as in opinion").

Crawford v. Metro. Gov't of Nashville & Davidson Cnty., 129 S. Ct. at 850. "When an employee communicates to his or her employer a belief that the employer has engaged in unlawful discrimination, that conduct 'virtually always' constitutes conduct for which the employee is entitled to protection under Title VII." Nyeneime Ibok v. Sec. Indus. Automation Corp., 05 Civ. 6584, 2009 WL 855926 at *8 (S.D.N.Y. Mar. 26, 2009) (paraphrasing Crawford v. Metro. Gov't), aff'd in part, rev'd in part on other grounds, 369 Fed. Appx. 210 (2d Cir. 2010). For example, an employee may "oppose" the employer's practice by informally complaining to management or, as Crawford held, speaking out about discrimination in response to questions rather than on the employee's own initiative. Crawford v. Metro. Gov't of Nashville & Davidson Cnty., 129 S. Ct. at 851 ("There is, then, no reason to doubt that a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.")[22]

---

[22]     See, e.g., Weiss v. Hustedt Chevrolet, No. 05-CV-4230, 2009 WL 2132444 at *13 (E.D.N.Y. July 13, 2009) ("[P]rotest[ing] or oppos[ing] statutorily prohibited discrimination . . . includes, for example 'informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges.'") (citations omitted, quoting Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990)).

Title VII retaliation claims also are governed by the <u>McDonnell Douglas</u> burden-shifting analysis.  <u>E.g.</u>, <u>Kaytor</u> v. <u>Electric Boat Corp.</u>, 609 F.3d 537, 552-53 (2d Cir. 2010); <u>Hicks</u> v. <u>Baines</u>, 593 F.3d 159, 164 (2d Cir. 2010); <u>Jute</u> v. <u>Hamilton Sundstrand Corp.</u>, 420 F.3d 166, 173 (2d Cir. 2005); <u>Terry</u> v. <u>Ashcroft</u>, 336 F.3d 128, 141 (2d Cir. 2003); <u>Diaz</u> v. <u>Weill Med. Ctr. of Cornell Univ.</u>, 2009 WL 285947 at *21 & n.27 (& cases cited therein).  Thus, once a plaintiff makes out a prima facie case of retaliation, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for its action.  <u>E.g.</u>, <u>Kaytor</u> v. <u>Electric Boat Corp.</u>, 609 F.3d at 552-53; <u>Hicks</u> v. <u>Baines</u>, 593 F.3d at 164; <u>Jute</u> v. <u>Hamilton Sundstrand Corp.</u>, 420 F.3d at 173.  If the defendant meets this burden, to avoid summary judgment the plaintiff must point to evidence sufficient to present an inference that the proffered reason is a mere pretext for retaliation.  <u>E.g.</u>, <u>Kaytor</u> v. <u>Electric Boat Corp.</u>, 609 F.3d at 552-53; <u>Hicks</u> v. <u>Baines</u>, 593 F.3d at 164; <u>Jute</u> v. <u>Hamilton Sundstrand Corp.</u>, 420 F.3d at 173.

While Walder alleges that Superintendent Connors' decision to deny her health leave at half pay was precipitated by her filing her NYSDHR/EEOC discrimination charge (Dkt. No. 8: Am. Compl. at 2; Dkt. No. 40: Walder Br. at 8-10), Walder fails to make out a prima facie case of retaliation because she cannot establish a causal connection between her NYSDHR/EEOC complaint and the denial of her request for health leave at half pay.

Causation can be established either directly through evidence of retaliatory animus or indirectly by demonstrating that the adverse employment action followed quickly on the heels of the protected activity or through other evidence such as disparate treatment of fellow employees. <u>See</u>, <u>e.g.</u>, <u>Lovejoy-Wilson</u> v. <u>NOCO Motor Fuel, Inc.</u>, 263 F.3d at 224; <u>DeCintio</u> v. <u>Westchester Cnty. Med. Ctr.</u>, 821 F.2d 111, 115 (2d Cir.), <u>cert. denied</u>, 484 U.S. 965, 108 S. Ct. 455 (1987).

The cases that accept mere temporal proximity between an employer's knowledge or protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be "very close."  See, e.g., Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 1511 (2001) (periods of three and four months between protected activity and adverse employment action insufficient to establish causal connection).  As the Second Circuit has observed, there is no "bright line rule" that defines "the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." Gorman-Bakos v. Cornell Co-op. Extension of Schenectady Cnty., 252 F.3d 545, 554 (2d Cir. 2001). Most of the decisions in this Circuit that have addressed this issue have held that lapses of time shorter than even three months are insufficient to support an inference of causation.  See, e.g., Hollander v. Am. Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990) (passage of two and a half months too long to establish retaliation for an EEOC complaint); Meggison v. Paychex, Inc., 679 F. Supp. 2d 379, 388 (W.D.N.Y. 2010) ("[T]hree months and twenty-four days [] is insufficiently temporally proximate to infer that [plaintiff's] termination was a result of his having taken FMLA qualifying leave."); Garrett v. Garden City Hotel, Inc., No. 05-CV-0962, 2007 WL 1174891 at *20-21 (E.D.N.Y. Apr. 19, 2007) (Two and one-half months in between plaintiff's "most recent complaint of racial discrimination" and her discharge "preclude[d] a finding of a causal connection between the protected activity and the adverse employment action."); Ruhling v. Tribune Co., No. CV-04-2430, 2007 WL 28283 at *23 (E.D.N.Y. Jan.3, 2007) ("district courts in this Circuit have consistently held that a passage of two months between the protected activity and the adverse employment action seems to be the dividing line") (citing cases); Cunningham v. Consol. Edison

Inc., No. CV-03-3522, 2006 WL 842914 at *19-20 (E.D.N.Y. Mar. 28, 2006) (a "lag of three, four, and fourteen months is too long for a causal inference to be appropriate"; the "passage of two months between the protected activity and the adverse employment action seems to be the dividing line").[23]

Walder filed her NYSDHR/EEOC charge in May 2006 and received the EEOC right to sue letter in August 2006.  (See pages 5-6 above.)  Walder filed her half pay leave request in December 2006 and Superintendent Connors denied Walder's request for "health leave at half pay" on December 18, 2006, seven months after the NYSDHR complaint and four months after the EEOC right to sue letter.  (See page 7 above.)  This period is too attenuated to give rise to an inference of retaliation.

_____Moreover, the WPSD has offered a legitimate, non-retaliatory, reason for denying Walder health leave at half pay: "she did not qualify for" the benefit.  (Dkt. No. 34: Def. Rule 56.1 Stmt. ¶¶ 12-13; Dkt. No. 32: Velez Aff. Ex. Q: Boehlert Aff. ¶ 6.)  According to the Collective Bargaining Agreement, only "Civil Service employees who have completed at least seven (7) years of satisfactory service in the school system" may receive health leave at half pay, and then only "[u]pon recommendation of the Superintendent."  (See page 7 above.)  Walder was ineligible because, at the time of her application, she had completed only six years of service (from

---

[23]  See also, e.g., Wayne v. Principi, 01 Civ. 941, 2004 WL 389009 at *13 (S.D.N.Y. Mar. 3, 2004) (three month period between protected activity and adverse act was not enough to establish a causal connection); Carr v. WestLB Admin., Inc., 171 F. Supp. 2d 302, 310 (S.D.N.Y. 2001) (four month lapse of time insufficient); Cobian v. N.Y.C., 99 Civ. 10533, 2000 WL 1782744 at *18 (S.D.N.Y. Dec. 6, 2000) (Peck, M.J.) (four-month gap is insufficient evidence of a causal connection), aff'd, 23 Fed. Appx. 82 (2d Cir. 2001).

November 27, 2000 to December 11, 2006).  (See pages 2 & 7 above).[24/]  Walder has offered no admissible proof to suggest that this explanation is a sham.

Accordingly, defendant WPSD's summary judgment motion is <u>GRANTED</u> and Walder's Title VII retaliation claim is dismissed.

### CONCLUSION

For the reasons set forth above, defendant WPSD's summary judgment motion (Dkt. No. 30) is <u>GRANTED</u> as to all claims.  The Clerk of Court is to enter judgment dismissing Walder's complaint in its entirety.

SO ORDERED.

DATED:        New York, New York
              September 24, 2010

Andrew J. Peck
United States Magistrate Judge

Copies to:      Adam Nicolazzo, Esq.
                Ian Orr, Esq.
                Lewis R. Silverman, Esq.
                Samantha Velez, Esq.

---

[24/]     Walder received an "unsatisfactory" rating for the 2005-06 school year and thus had only five years of <u>satisfactory</u> service.  (See pages 4-5 above.)